CITIES SERVICE OIL CO. et al. v.
GREEN et al.
No. 6629.

Court of Civil Appeals of Texas. Texarkana.
Sept. 4, 1952.

Rehearing Denied Oct. 9, 1952.

Fulton & Hancock, Edwin M. Fulton, Gilmer, Barksdale Stevens, R. H. Whilden, Houston, H. J. Patterson, W. B. Weaver, Ft. Worth, Florence, Florence & Meredith, Gilmer, for appellants.

Harrington & Harrington, Earl Roberts, W. M. Steger, Longview, Tom H. Davis, III, Austin, for appellees.

**WILLIAMS, Justice.**

In 1917, when one Era Anderson owned a fifty-acre tract out of the David Ferguson survey, and after a surveyor employed by him had established the corners to this tract, he built his fence some eight or ten feet back from the south boundary line as established by the surveyor. A passageway then existed along this south boundary line which was then being used by folks living to the east. From that time to the date of trial this fence line was never changed. Title to the fifty-acre tract subsequently vested in the Riddle Exchange Bank of Gladewater, Texas. The bank, through its receiver, sold and conveyed same on February 23, 1927, to Oliver Lockett, an appellant here. The field note descriptions in each of above conveyances are the same. Each deed calls for 50 acres of land out of the David Ferguson survey. The south boundary line of the David Ferguson survey is definitely called for in above deeds as the south boundary line of the 50 acre tract.

Horace Green and Aubrey Green, plaintiffs below, purchased on December 22, 1926, from the receiver of the Riddle Exchange Bank 67 acres of land, being in two 33½ acre adjoining parcels out of the W. C. Wakeland survey. The W. C. Wakeland H. R. Survey is definitely called for as the north boundary line of this 67 acre tract. It is to be noted that the south boundary line of the 50 acre tract, the south boundary line of the David Ferguson survey, the north boundary line of the Wakeland survey and the north boundary line of the 67 acre tract calls for a common boundary line.

In this trespass to try title action, appellees Horace and Aubrey Green, brothers, plaintiffs below, seek to recover title and possession of a strip along said common boundary line. They base their right of recovery solely on the ten year statute of limitation, Art. 5510, R.C.S. of Texas, so specifically pleaded by them. This limitation title asserted by them and so submitted to the jury is confined to a period of ten consecutive years after December 22, 1926, the date of their purchase of the 67 acre tract, and prior to April 1, 1938, the date this suit was filed. Under the field notes pleaded in their sixth amended original petition and their trial amendment, under which trial was had, the strip is approximately 976 feet long. Its width varies from 18½ feet to 4 feet to a point, evidently reflecting the variations from a true east and west line and the attraction of some trees along the way to serve as posts in the construction of Anderson's south fence. In their pleadings plaintiffs subdivided this strip by metes and bounds into three sections, and designated same as "first" or the "home tract"; the middle as the "second" or "pasture" tract; and the east section as the "third" or "cultivated" tract; all of which they alleged to be out of the David Ferguson Survey. Jury findings sustained their limitation plea as to the "home" and "cultivated" sections but rejected their plea as to the "pasture" section. Based on jury findings, plaintiffs were jointly awarded title to the "home" and "cultivated" sections with a take nothing judgment as to the "pasture" section.

Appellants, defendants below, are Cities Service Oil Company, Shell Oil Company, J. S. Birdwell and a host of others, who are the asserted owners of oil producing leaseholds and other mineral interests in the area, together with Oliver Lockett, an insane person, and the guardian of his estate, the asserted fee owner of the strip.

On December 22, 1926, and for several years prior and subsequent thereto, title to the 67 and 50 acre tracts, both, rested in said bank. In 1924, and for several years prior and subsequent thereto the bank was in receivership. Aubrey Green, one of the plaintiffs, under a rental contract with the receiver, occupied and farmed the 67 acre tract through the years 1924, 1925 and 1926, and paid the rentals each year to the receiver. During this tenancy and in early 1924 Aubrey Green repaired the fences on this farm and in doing so, he enclosed the strip in controversy with the 67 acre tract by tacking the two north-south fences onto the south fence that had been built by Anderson. The receiver furnished the wire in the repairs to the fence and paid Aubrey for his work.

After the enclosure in the manner stated, Aubrey proceeded to and did cultivate portions of the strip along with his farm operations during his tenancy. After he and Horace Green purchased the tract on December 22, 1926, Aubrey Green continued to cultivate a portion of the strip in his farming of the 67 acre tract through the years up to April 14, 1938, the date this suit was filed, a period of some eleven years and three months. The record is not clear whether or not Horace Green cultivated any portion of this strip during this period. Horace may have pastured a mule on it in connection with a pasture on the 67 acre tract. During the period involved, each plaintiff has maintained separate residences on the 67 acre tract. In the use of the term "67 acre tract" in this opinion we have reference to that body of land clearly within the field note description in the deed into plaintiffs.

It was plaintiffs' position that a part of the yard to Aubrey's residence was embraced in the field note description they designated as the "home" tract. The jury's finding adversely to plaintiffs on what they designated the "pasture" tract evidently rested on evidence that the fences had not enclosed same for a ten-year consecutive period of time. Plaintiffs jointly purchased the 67 acre tract and the deed into them so reads. They each claim an undivided one-half interest in the 67 acres and the strip in controversy. .

■ This record contains a mass of surveying testimony. Each amended pleading of plaintiffs has narrowed the strip in controversy. The trial amendment reduced the area of the strip to less than one-fourth of an acre. Throughout this opinion we have assumed that the area recovered is within the Ferguson survey, although this record is without a jury finding that it is. Plaintiffs make no claim that they or either of them ever gave any one actual notice of their adverse claim to the strip in controversy. We seriously doubt that plaintiffs, the receiver or any one else knew during the period the true location of the boundary line. Although ignorant of the line, plaintiffs claimed all the land under the fence during the period. Plaintiffs' alleged joint and exclusive possession was open and visible, which would raise the presumption of an adverse and hostile claim. Their use and occupation were in keeping with a claim of ownership. The points presented which attack the sufficiency of the evidence to support the jury's findings on adverse possession are respectfully overruled.

■ The jury found that Oliver Lockett was a person of unsound mind on February 23, 1927, when his guardian purchased the 50 acre tract, and that he has so remained in such mental condition up to the present. We are in accord with appellants' contention that both the 50 acre and 67 acre tracts were in custodia legis on December 22, 1926, when the receiver sold the 67 acre tract to the Greens, and the 50 acres so remained in custodia legis until February 23, 1927. But in our opinion the holding in McNutt v. Cox, 133 Tex. 409, 129 S.W.2d 626, 122 A.L.R. 941, an opinion by the Commission of Appeals, adopted by our Supreme Court, forecloses appellants' claim that the running of the ten year statute of limitation was tolled until February 23, 1927. But if it be assumed that the above fact did toll the running of the limitation statute, the insanity of Lockett may not be "tacked" on to prevent the running of such limitation statute. Art. 5544, R.C.S. of Texas, provides: "The period of limitation shall not be extended by the connection of one disability with another; and, when the law of limitation shall begin to run, it shall continue to run, notwithstanding any supervening disability of the party entitled to sue or liable to be sued." See also 28 T.J., p. 242, Sec. 143.

We agree with appellants that if the strip in controversy is outside the boundaries of the land described in the deed into plaintiffs and is within the David Ferguson H. R. Survey, then plaintiffs are here asserting a joint claim as naked trespassers under the ten year statute of limitation.

The further assertion of appellants that such "joint" possession and claim as naked trespassers cannot ripen into a title under the ten year limitation statute presents somewhat of a novel question. Here each brother claimed one-half interest. Neither

claimed any particular part against the other brother, but jointly claimed the strip.

■ In W. T. Carter & Bro. v. Holmes, 131 Tex. 365, 113 S.W.2d 1225, 1226, cited by appellants, in an opinion by the Commission of Appeals, the rule advanced here is restated as follows: "Nor does the statute (Art. 5510) make any provision for two or more defendants to hold jointly as naked trespassers or possessors, but each must hold exclusive as against the world", citing Crumbley v. Busse, 11 Tex.Civ.App., 319, 32 S.W. 438. "The reason for the rule is that proof of joint possession would not designate any particular portion of the land to which the ten-year statute [of limitation] would apply, and would not authorize a decree for any definite part of the land", citing Walker v. Maynard, Tex.Civ. App., 31 S.W.2d 168, 170. We agree with the application of above rule to the facts involved in above-cited cases but would hesitate to apply such rule to the facts involved in this record in the absence of the holding in Humphreys v. Gribble, Tex.Civ. App., 227 S.W.2d 235, w/r, NRE. Humphreys v. Gribble, supra, involved facts and circumstances substantially in effect the same as here. The application of this rule went to the heart of Gribble's claim under the ten year statute of limitation. As we interpret this decision exclusive possession did not exist because he, his daughter, and son-in-law, together, occupied the premises for a number of years so as to defeat the required period of exclusive possession. We therefore conclude by virtue of this decision and the action by the Supreme Court on application for writ of error that the alleged joint possession of these two naked trespassers for the period mentioned did not ripen into a ten year limitation title.

Appellants reassert here as in the trial court that a judgment entered in 1933, in the District Court of Gregg County, numbered 1197–B on the docket and hereinafter called the Green-Locus Judgment, "adjudicated the rights to the leasehold estate upon the land involved in the instant suit and precludes a relitigation of the same matter; constitutes a judgment by estoppel, and interrputed the running of the statute in plaintiffs' favor, if the same ever commenced." In this connection it is again noted that plaintiffs' limitation claim is confined to some ten consecutive years between December 22, 1926, and April 18, 1938.

Appellants pleaded and introduced above judgment in evidence in support of above asserted defense. Plaintiffs were permitted to introduce in evidence over the objections of appellants the original and first amended original petitions of Horace Green and Aubrey Green, the plaintiffs in that suit; and the original and first amended original petition in intervention of the Empire Gas and Fuel Company, the then asserted owner of the gas and leasehold estate. This company is the predecessor in title to Cities Service who succeeded to all rights and title of the former. This Green-Locus judgment recites appearance of the various litigants; leave of Empire Gas and Fuel Company to intervene; jury findings on various statutes of limitation, all favorable to the plaintiffs there and in favor of the intervenor; adjudication of claims of various royalty owners, adjudication of various claims to the fee title; and removal of various asserted clouds by adverse claimants to the land and leasehold. This judgment decrees that Empire Gas and Fuel Company recover the leasehold estate and that Horace and Aubrey Green, subject to said leasehold estate, recover the fee title to "all that certain lot, tract or parcel of land situated in Gregg County, Texas, a part of the W. C. Wakeland Survey, about 5 miles East of the town of Gladewater, Texas, being the east half of the Edmond Green tract of land and described as follows, to-wit: First Tract: Beginning at the S.W.C. of a survey made for Mose Turner; Thence N. 660 vrs. to the line of the said Wakeland Survey for corner; Thence W 287½ vrs. along the NB line of the said Wakeland Survey to the 33½ acre tract formerly owned by J. Roy Knox for corner; Thence 660 vrs. along the E line of said J. Roy Knox tract to corner; Thence E 287½ vrs. to the place of beginning, containing 33½ acres of land.

Second Tract: Situated in Gregg County, Texas, a part of the W. C. Wakeland Survey about five miles E of the town

of Gladewater, Texas, Beginning 287½ vrs. W of the S.W.C. of a ———— made for Mose Turner; Thence N 660 vrs. to a stake for corner; Thence West 287½ vrs. to N E C of a tract surveyed for James Wilson; Thence South with his E line 660 vrs. to a stake; Thence E 287½ vrs. to the place of beginning, containing 33½ acres of land, more or less, said two tracts of land being the same land conveyed by W. W. Bradley, receiver of Riddle Exchange Bank of Gladewater, to Horace and Aubrey Green, December 22, 1926, by deed duly recorded in the Deed Records of Gregg County, Texas, and being the same land deeded December 27, 1882, by Elizabeth Barnes et al., to Edmond Green by deed recorded in Volume G, page 325, Gregg County Deed Records, *it being intended to cover and include in this description all of the land owned or claimed by said Horace and Aubrey Green in Gregg County, Texas, on October 8, 1930.*" (Italics ours.)

October 8, 1930, mentioned in above decree, refers to the date of the oil and gas lease executed by Horace and Aubrey Green to one Williamson, the title to which through mesne conveyances was invested in Empire Gas and Fuel at the time above suit was litigated to judgment. This lease contained the same descriptive recitals of the land as set out in the decree, save and except the clause indicated in our italics. Instead, the description of the land in the lease closes with the clause: "It being intention to include all land owned or claimed by lessors in said surveys."

Plaintiffs assert that this Green-Locus judgment is void and is here subject to a collateral attack to that part of the decree which reads: "It being intended to cover and include in this description all the land owned or claimed by said Horace and Aubrey Green in Gregg County, Texas, on October 8, 1930." And in support of this position plaintiffs introduced in evidence over appellants' objections the respective pleadings of the Greens and that of intervenor which pleaded the same description of the land as contained in the oil lease,

save and except such pleadings close the description of the land with the clause "it being the intention to include in the above description all land owned or claimed by plaintiff in said survey" instead of the plural "surveys." "In Moore v. Perry, 13 Tex.Civ.App. 204, 35 S.W. 838, 841, the rule is thus stated: 'The judgment is the final act of the court, and where a court has jurisdiction of the subject-matter, and renders a judgment, its validity will depend neither on the regularity of the process, nor the sufficiency of the pleadings.' In Conner v. McAfee, Tex.Civ.App., 214 S.W. 646, 648, in which a writ of error was denied by the Supreme Court, the court said: 'In an exhaustive note to the case of Jarrell v. Laurel Coal & Land Co., reported in L.R.A.1916E, 316, the question of a collateral attack upon a judgment because of the insufficiency of the pleadings is fully discussed, and a multitude of cases from practically every state in the Union is cited, holding that such attack cannot be sustained, and that even though the judgment should grant more relief than is demanded, it is not void.'" In the words of the Supreme Court in Empire Gas and Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.2d 1092, 1096, "Those objections would be good in a direct attack upon the judgment in the court which pronounced it or in a higher court, upon appeal, writ of error, or certiorari. * * * But where judgments are collaterally assailed their jurisdictional recitals are not open to attack but import absolute verity", citing numerous authorities. See also Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 111 A.L.R. 1152; Hartel v. Dishman, 135 Tex. 600, 145 S.W.2d 865; 25 Tex.Jur. Sec. 330, p. 857.

We, therefore, conclude that the Green-Locus judgment should be extended its face value, and when collaterally attacked as here, the court will not go behind the recitations in the judgment to ascertain if there be any alleged discrepancy between the pleadings and the judgment, as here urged. In view of all the surveying evidence and the uncertainty of the loca-

tion of the true boundary line which has existed through the years, it is logical and reasonable to conclude that the clause in the decree under attack was merely descriptive in nature to further identify the tract or farm then owned or claimed by plaintiffs. See Baton v. Gulf, Tex.Civ. App., 235 S.W.2d 491.

Grounded upon above conclusion that the judgment is not subject to impeachment on the grounds urged in this collateral attack, it legally follows that such judgment shows an outstanding leasehold title in Cities Service Oil Company, the successor in title to Empire Gas & Fuel Company, and precludes plaintiffs' recovery. "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action." Art. 7391, R.C.S. of Texas. The Green-Locus judgment interrupted plaintiffs' alleged adverse possession in 1933 which would defeat any alleged possession of ten consecutive years between December 22, 1926, and April 18, 1938. "A final judgment against the adverse claimant, in possession in a suit of trespass to try title, although not disturbing actual possession will interrupt the running of limitations in favor of such occupant and all persons claiming from or under him; and the fact that the judgment was rendered by agreement will not affect its conclusive force * * *." 2 C.J.S., Adverse Possession, § 153, p. 726. See also Davis v. Morley, Tex.Civ.App.,169 S.W.2d 561, 567.

In view of the conclusions above expressed, it is unnecessary to discuss or dispose of the other points presented. For the reasons above indicated the judgment of the trial court is reversed and judgment is here rendered that plaintiffs take nothing by the suit.

Judgment is reversed and rendered.